UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NEIL WALLACE,

                    Petitioner,

           v.

DALE ARTUS,[1]

                  Respondent.

_____

**REPORT AND
RECOMMENDATION**

06-CV-464
(FJS/VEB)

## I. INTRODUCTION

Petitioner Neil Wallace, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  When this case was filed, Petitioner was an inmate at the Wallkill Correctional Facility[2].  While the case was pending, Petitioner was released to parole supervision.

In 2002, Petitioner was convicted in a New York State court of Second Degree Attempted Murder and two counts of Second Degree Criminal Possession of a Weapon. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

_____

[1]The correct Respondent is Francisco Rivera, the Superintendent of the Wallkill Correctional Facility.  28 U.S.C. § 2243.  In light of Petitioner's pro se status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to Francisco Rivera.  The Clerk of the Court is directed to terminate Dale Artus as Respondent, add Francisco Rivera, Superintendent of the Wallkill Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

[2]When Petitioner commenced this action, he was incarcerated at the Clinton Correctional Facility. A review of the Department of Correctional Services' website indicates that he was thereafter transferred to Wallkill Correctional Facility.  He was released to parole supervision on November 20, 2010.  Petitioner duly filed a change of address notification with the Clerk of the Court on January 12, 2011. (Docket No. 16).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for a report and recommendation. (Docket No. 14).

## II. BACKGROUND

### A.    Facts

The following factual summary is derived from the state court records.  In the late evening hours of May 19, 2001, Petitioner, a retired police officer, fought with another patron at a bar in Durham, New York.  (T at 225, 412 ).[3]

During the scuffle, the bar owner, Thomas Furlong, Sr., who knew Petitioner, asked him to stop fighting.  (T at 241).  Petitioner hit Furlong, Sr., sending him to the floor.  (T at 241).  Thomas Furlong, Jr. ("Furlong, Jr."), the bar owner's son, grabbed Petitioner "by his collar and belt and threw him out the door" of the bar and told him not to come back.  (T at 242, 487-488).

Thereafter, at about one o'clock in the morning of May 20, 2001, Petitioner returned to the bar with two .38 special caliber revolvers. (T at 415, 420 and Docket No. 3 at 2).  Upon entering the bar, he spotted Furlong, Jr. and began shooting.  (T at 415).  Petitioner followed Furlong, Jr. as he ran out of the back of the bar and continued shooting.  (T at 415).  Petitioner then got into his van and drove away.  (T at 418).  No one was injured.  Petitioner was arrested at his home a short while later and gave a statement to the police confessing to firing shots, but stating that Furlong, Jr. had physically harmed him and he

---

[3]References preceded by "T" are to the transcript pages of Petitioner's trial.

wanted to scare him.  (T at 411-421).

Thereafter, a Greene County Grand Jury returned Indictment Number 01-094, which charged Petitioner with two counts of Attempted Murder in the Second Degree, two counts of Criminal Possession of a Weapon in the Second Degree, and one count of Reckless Endangerment in the First Degree.

### B.    State Trial Court Proceedings

The Honorable George J. Pulver, Greene County Court Judge, presided over Petitioner's trial proceedings.  The trial began on April 29, 2002 and concluded on May 2, 2002.  Petitioner was represented by Dennis B. Schlenker, Esq.  At the conclusion of the trial, the jury found Petitioner guilty of one count of Attempted Murder in the Second Degree and two counts of Criminal Possession of a Weapon in the Second Degree.(T at 771-774).[4]

On July 9, 2002, Petitioner was sentenced to a determinate term of ten (10) years imprisonment for his conviction of Attempted Murder in the Second Degree and a determinate sentence of ten (10) years for each of his two convictions of Criminal Possession of a Weapon (to run concurrently with his sentence for Attempted Murder in the Second Degree). (S at 16-17).[5]

### C.    State Appellate Proceedings

Petitioner, represented by Carl J. Silverstein, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner

---

[4]Because the trial court instructed the jury not to consider the charge of reckless endangerment if they found Petitioner guilty of attempted murder, there was no verdict as to the charge of reckless endangerment.  (T at 755).

[5]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

asserted that his conviction for attempted murder in the second degree was against the weight of the evidence.

In a decision issued on June 10, 2004, the Appellate Division affirmed Petitioner's conviction. People v.Wallace, 777 N.Y.S.2d 817 (3d Dep't 2004). The appeals court found that the conviction was not against the weight of the evidence and that Petitioner's claim that he was merely trying to scare Furlong was an issue for the jury to resolve. Id. at 820. Petitioner's application for leave to appeal to the Court of Appeals was denied on August 31, 2004. People v.Wright, 3 N.Y.3d 682 (2004).

In May of 2005, Petitioner, acting *pro se*, filed an application for a writ of error *coram nobis*. Petitioner argued that his appellate counsel unreasonably failed (1) to argue that trial counsel was ineffective for failing to remove a potential juror for cause based on the juror's statement during voir dire that he could not be fair and impartial; (2) to raise the issue of the trial court's error in allowing damaging photographs of a "sixth" bullet hole found on the rear door of the bar without requiring the prosecution to lay a proper foundation; (3) to argue that trial counsel was ineffective for failing to seek a jury charge on the lesser included offense of attempted assault in the second degree; and (4) to raise the issue of the indictment as defective for charging Petitioner with both intentional conduct (attempted murder) and reckless conduct (reckless endangerment) when the evidence supported only recklessness.

On August 16, 2005, the Appellate Division, Third Department, denied the application. Petitioner's application for leave to appeal that denial was denied by the Court of Appeals on January 25, 2006.


**D.  Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action on April 3, 2006, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1).  In his Petition, Petitioner asserts that he was denied the effective assistance of appellate counsel and that the evidence was insufficient to sustain the conviction of attempted murder.  See (Docket No. 3).

In September of 2006, Petitioner filed a supplemental memorandum of law adding a further argument in support of his ineffective assistance of appellate counsel claim, namely, that his appellate counsel was ineffective for failing to raise the issue on appeal that his indictment was defective for charging Petitioner with both intentional conduct (attempted murder) and reckless conduct (reckless endangerment), where the evidence only supported the charge of recklessness.  See (Docket No. 7).

Respondent filed a Response and memorandum of law in opposition on October 4, 2006.  (Docket Nos. 10, 11).  Petitioner filed his Traverse on November 2, 2006 (Docket No. 12).

## III. SUBJECT MATTER JURISDICTION

During the pendency of this petition, Wallace was conditionally released to parole supervision on November 20, 2010, from Wallkill Correctional Facility.[6] However, Wallace's petition has not been mooted by his discharge from incarceration.

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are ' in custody in violation of the

---

[6]See Entry for Inmate Neil Wallace, DIN 02A4295, on the New York State Department of Corrections Inmate Locator Service, available at http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130 (last accessed February 2, 2011).

Constitution or laws or treaties of the United States.'" <u>Maleng v. Cook</u>, 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (quoting 28 U.S.C. § 2241(c)(3) and citing 28 U.S.C. § 2254(a)).

The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." <u>Maleng</u>, 490 U.S. at 490-91, 109 S.Ct. 1923 (citing <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968)). Here, Wallace has been released from prison and is under parole supervision. However, at the time he filed his habeas petition, he was incarcerated. Therefore, he fulfills the "in custody" requirement of 28 U.S.C. § 2254.

The next question is whether Wallace's petition presents a "live case or controversy," under Article III, Section 2 of the United States Constitution, for this court to review. Article III, Section 2 of the Constitution limits the subject matter of the federal courts to cases that present a "case or controversy." <u>See</u> <u>e.g.</u>, <u>Spencer v. Kemna</u>, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); <u>accord</u>, <u>e.g.</u>, <u>United States v. Mercurris</u>, 192 F.3d 290, 293 (2d Cir.1999).

"Thus, where the issues presented by a party in an action are no longer 'live,' or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot." <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). "[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury, which is likely to be redressed by a favorable judicial decision." <u>Mercurris</u>, 192 F.3d at 293 (citing <u>Spencer</u>, 523 U.S. at 7, 118 S.Ct. 978). "[I]f an event occurs during the course of the proceedings or on appeal that makes it

6

impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case." United States v. Blackburn, 461 F.3d 259, 261 (2d Cir.2006) (internal quotation marks and citations omitted).

However, "[a] criminal case does not necessarily become moot when the convict finishes serving the sentence," but rather "the case will remain a live case or controversy if there exists 'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction." Mercurris, 192 F.3d at 293 (quoting Spencer, 523 U.S. at 7, 118 S.Ct. 978).

Where the petitioner challenges the criminal conviction itself, the Supreme Court "has been willing to presume the existence of collateral consequences sufficient to satisfy the case or controversy requirement; or in a practice that it views as 'effectively the same,' the Court has been willing 'to count collateral consequences that are remote and unlikely to occur.'" United States v. Probber, 170 F.3d 345, 348 (2d Cir.1999)(quoting Spencer, 523 U.S. at 8, 118 S.Ct. 978). This presumption of collateral consequences was articulated in Sibron v. New York, 392 U.S. 40, 54-56, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), where the Supreme Court noted that "most criminal convictions do in fact entail adverse collateral legal consequences," such as deportation, inability to become a citizen, the use of the conviction impeachment evidence in future criminal trials, being barred from holding certain offices, voting in state elections, serving as a juror, and having the conviction used to enhance future prison sentences.

"After Sibron, a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment 'only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'" Perez v. Greiner, 296 F.3d 123, 125 (2d Cir.2002) (quoting Sibron, 392 U.S. at 57, 88 S.Ct.

7

1889)).

The Supreme Court has stated that a challenge to the conviction itself carries the presumption that a collateral consequence, such as parole or probation, exists. Spencer v. Kemna, 523 U.S. at 8. At the present time, Wallace continues to bear certain adverse collateral consequences of his criminal conviction in terms of continuing restraints on his liberty–that is, his conditional release from incarceration to parole supervision. Therefore, I find that the petition is not presently moot. See, e.g., Plato v. Morrissey, 638 F. Supp.2d 338, 343 (W.D.N.Y. 2009) (order of Siragusa, D.J., adopting report and recommendation of Bianchini, M.J.) (holding that petition was not moot, where petitioner continued to bear adverse collateral consequences of his criminal conviction in terms of continuing restraints on his liberty, namely, conditional release to parole supervision).

## IV. DISCUSSION

### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to

constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but

unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

Petitioner asserts five (5) claims in support of his Petition for habeas relief. Petitioner's first four (4) claims are based upon the alleged ineffective assistance of appellate counsel.  The fifth and final claim challenges the sufficiency of the evidence.  Each claim will be addressed in turn.

**1.    Ineffective Assistance of Appellate Counsel Standard**

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test.  First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution.

Id. at 688, 104 S.Ct. 2052.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id.  Second, a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052.

The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that the performance of counsel was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

Although Strickland's two-pronged test was originally formulated to judge trial counsel's performance, it applies in the context of evaluating the effectiveness of appellate counsel's representation as well.  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994).

To establish that appellate counsel failed to render effective assistance, a petitioner must do more than simply demonstrate that counsel omitted a non-frivolous argument, because appellate counsel is not required to raise all potentially colorable arguments. Id. (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)).   As such, failure to raise an argument on appeal constitutes ineffective assistance only when the omitted issue is clearly stronger and more significant than those presented. See id. (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

Moreover, as this Petition is governed by AEDPA, the fundamental question before this Court is whether the state courts' *coram nobis* decision rejecting Petitioner's ineffective appellate counsel claims "amounted to an unreasonable application of the Strickland standard." Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir.2001).


   2.      **Ineffective Assistance of Appellate Counsel (Biased Juror)**

Petitioner asserts that his appellate counsel was ineffective because he did not raise the issue of trial counsel's failure to excuse a prospective juror for cause.

Pursuant to the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed the right to an impartial and unbiased jury. Morgan v. Illinois, 504 U.S. 719, 727, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992) ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process.") (citations omitted); see also United States v. Nelson, 277 F.3d 164, 201 (2d Cir.2002) (The right to trial before an impartial trier of fact-be it a jury or a judge-therefore implicates Due Process as well as Sixth Amendment rights.").

In the present case, the following colloquy took place during jury selection:

The Court:          Hi, Mr. Herwick.  You are a kid that hung around bars?

Juror Herwick:      I had no choice.

The Court:          In narrative form, would it affect your judgment one way or the other in the case, as you know the facts of this case so far?

Juror Herwick:      The only reason I brought it up, when you were reading the indictment and explaining that the situation occurred in and around a bar and you said it several times, I kept thinking of all the instances of when I was growing up and I actually tended the bar and helped with my grandparents, the types of situations that might have occurred and I didn't think if that would affect any of the situations that occurred.

Trial Counsel:      The fact that you will find out a person is going to testify for the prosecution was the son of the owner, and the owner of the bar and so forth, are these facts, because of your personal circumstances growing up, going to cause you to favor one side or the other?

Juror Herwick:      Well, I definitely have an opinion about what I have experienced.

12

| | |
|---|---|
| Trial Counsel: | Well, what is that opinion? |
| Juror Herwick: | I don't mean to be - - I'm just not a person that attends bars.  I think the type of people that attended my grandfather's bar from that community, there was always a lot of trouble and I might have an opinion that might not have been true and that was the reason I brought that up. |
| Trial Counsel: | Does that mean you would stand ready to convict somebody in a bar situation anymore quickly that anyone else? |
| Juror Herwick: | If the same situation occurred in a mall, I guess I wouldn't have any problem with it.  Since it occurred near a bar, I might think - - no offense- - but the type of bar person that would attend that bar or what occurs there, they become more inebriated, certainly has an effect on that and I witnessed it many times.  At my grandfather's bar, he himself carried a weapon to protect himself in various situations where he was in danger. |
| Trial Counsel: | Okay. |

(T at 115-117).

### a.   Trial Counsel's Failure to Challenge Juror Herwick

As a threshold matter, to establish an ineffective assistance claim on the part of appellate counsel, Petitioner must demonstrate that the underlying decision by trial counsel not to challenge the prospective juror was itself ineffective.  In other words, because the failure to raise a meritless claim on appeal cannot constitute ineffective assistance of appellate counsel, Petitioner must show that he had a meritorious claim of ineffective assistance of trial counsel in the first instance.

As evidenced by the colloquy set forth above, Juror Herwick clearly expressed doubt as to whether he could be fair to a person who frequented bars.  Indeed, the juror specifically referenced the fact that his grandfather carried a weapon for protection due to the "trouble" caused by bar patrons,  and indicated that his life experience would color his view of the "type of person" who frequented bars.  Juror Herwick additionally noted that he would view the same facts differently if the incident occurred in a shopping mall, as opposed to a bar.  His comments clearly indicated that he harbored bias toward bar patrons.

No follow-up questions were asked, nor were any efforts made to require more responsive answers after the colloquy quoted above.  <u>See</u> (T at 117). The absence of any further inquiry into the prospective juror's ability to be impartial is rather startling, given that the individual had just given a very clear indication that he was biased against bar patrons (and specifically inclined to believe such patrons were likely to engage in violence) and in sympathy with bar owners.  It bears repeating that the accused here, Wallace, was a bar patron; the victim was the bar owner's son. Like the victim, Juror Herwick had a close relation–his grandfather–who was a bar owner. Herwick was never asked for, and never

14

gave, an unequivocal assurance that he could be fair and impartial toward Petitioner.  See United States v. Nelson, 277 F.3d 164, 203 (2d Cir. 2002) ("[I]t is important that a juror who has expressed doubts about his or her impartiality also unambiguously assure the district court, in the face of these doubts, of her willingness to exert truly best efforts to decide the case without reference to the predispositions and based solely on the evidence presented at trial.") (citation omitted).

There is no suggestion that Juror Herwick's statements were mistranscribed or that there is some missing section of the transcribed jury selection proceedings. The only reasonable way to interpret Juror Herwick's responses are that he was expressing a bias against Petitioner. Because of the absence of follow-up questions, Juror Herwick's statements indicating bias are the only evidence available to review. Where a juror has offered assurances of impartiality, a reviewing court may consider them in deciding whether a defendant has satisfied his burden of proving actual prejudice. Hughes v. United States, 258 F.3d 453, 459-60 (6th Cir. 2001) (citation omitted). However, in this case, due to trial counsel's omission, Juror Herwick was not even asked to offer assurances of impartiality on which a reviewing court might rely. Id. at 459-60.

Defense counsel did not challenge Juror Herwick for cause or by a peremptory challenge.  As a result, Herwick was seated and served as a juror in the case.

Defense counsel's strategic and tactical decisions are always afforded great deference. See Strickland, 466 U.S. at 690-99.  However, in the present case, Juror Herwick clearly expressed doubt about whether he could be fair toward Petitioner.  In fact, his responses indicated that he was very likely to be biased against Petitioner.  Defense counsel's failure to challenge Juror Herwick for cause (or, at least, to ask follow up questions

to determine whether Herwick could set aside his personal experience and be fair and impartial) cannot be supported by any arguable strategic justification. The importance of having impartial individuals adjudicate a criminal defendant's guilt or innocence cannot be understated. See Gomez v. United States, 490 U.S. 858, 876, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) ("Among those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury.") (quotations and citation omitted).

Thus, this Court concludes that trial counsel's conduct in this regard fell below an objective standard of reasonableness and constituted ineffective assistance of trial counsel. See People v. Rivera, 845 N.Y.S.2d 636, 637-68 (4th Dep't 2007) (finding that defense counsel was ineffective due to failure to consent to removal of prospective juror who never gave unequivocal assurance of ability to be fair and impartial); Hughes v. United States, 258 F.3d at 460 ("Absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel.") (quoting Johnson v. Armontrout, 961 F.2d 748, 755 (8th Cir.1992)).

**b.    Appellate Counsel's Decision Not to Raise Claim**

Thus, the question becomes whether the failure of Petitioner's appellate counsel to raise this particular ineffective assistance claim was itself conduct falling below an objective standard of reasonableness under Strickland.

The Second Circuit has held that a habeas petitioner "may establish constitutionally inadequate performance if he shows that [appellate] counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo,13 F.3d at 533.  Accordingly, the question presented is whether, under New York law, Petitioner had

16

a significant and obvious ineffective assistance claim regarding his trial counsel's failure to challenge Juror Herwick.

Under New York law, "[i]It is well settled that a prospective juror 'who has revealed doubt, because of prior knowledge or opinion, about her ability to serve impartially must be excused unless the [prospective] juror states unequivocally on the record that she can be fair.'" People v. Payne, 853 N.Y.S.2d 791, 792 (4th Dep't 2008) (quoting People v. Arnold, 96 N.Y.2d 358, 362, 753 N.E.2d 846 (2001); citing People v. Bludson, 97 N.Y.2d 644, 646, 736 N.Y.S.2d 289, 761 N.E.2d 1016 (2001)).

"Indeed, *nothing less* than a personal, unequivocal assurance of impartiality can cure a [prospective] juror's prior indication that she is predisposed against a particular defendant or particular type of case" Id. (quoting Arnold, 96 N.Y.2d at 364) (emphasis added)).

Where the testimony of a prospective juror reveals uncertainty, the court must examine the juror's testimony as a whole . . . and "should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve" People v. Escoto, 725 N.Y.S.2d 771, 772 (4th Dep't 2001) (quoting People v. Branch, 46 N.Y.2d 645, 651, 389 N.E.2d 467 (1979)) (citations omitted).

While New York law "does not require any particular expurgatory oath or 'talismanic' words, jurors must clearly express that any prior experiences or opinions that reveal the potential for bias will not prevent them from reaching an impartial verdict." Arnold, 753 F.3d at 851 (citations omitted). "If there is any doubt about a prospective juror's impartiality, trial courts should err on the side of excusing the juror, since at worst the court will have 'replaced one impartial juror with another.'" Id.

"Prospective jurors who make statements that cast serious doubt on their ability to

render an impartial verdict, and who have given less-than-unequivocal assurances of impartiality, *must* be excused." Id. (emphasis added).

In light of the case law discussed above, this Court finds that Petitioner had a strong and obvious argument that his trial counsel was ineffective for failing to challenge Juror Herwick for cause or, at a minimum, for failing to question him further to determine whether he could provide the requisite unequivocal assurance of fairness and impartiality.

Moreover, this obvious argument was clearly stronger than many, if not all, of the arguments actually advanced on appeal. The brief filed by Petitioner's appellate counsel was barely fifteen (15) pages long, two (2) pages of which were used to present the statement of facts. Petitioner's appellate counsel offered two very weak claims regarding the trial court's evidentiary rulings.

For example, appellate counsel asserted that prosecution witnesses were improperly permitted to testify that Petitioner "shot at" Furlong Jr. without a foundation having been established that those witnesses were in a position to observe the shooting. The Appellate Division readily disposed of this claim, noting that "it was established that [the witnesses] were physically present during the shooting, . . . [t]hey described both their physical location on the premises and their opportunity to view defendant's conduct, . . . and they had several meaningful opportunities to view the incident." Wallace, 777 N.Y.S.2d at 820.

Likewise, appellate counsel argued that the trial court erred by limiting the cross-examination of the victim regarding a pending civil suit against Petitioner. Petitioner's appellate counsel devoted a single paragraph to advancing this argument in the appellate brief. Under the circumstances, the likelihood that an appellate court would conclude that this constituted reversible error was very small, as confirmed by the Appellate Division's

finding.  To wit, the Appellate Division found that "County Court permitted counsel to ask about the action, and testimony revealed that there was a significant amount of money at stake. Although such questioning was circumscribed, it was sufficient to enable the jury to consider whether Furlong had an ulterior motive in testifying." Id.

In addition, Petitioner's appellate counsel also raised two claims (one regarding the indictment, the other concerning the jury charge) that the Appellate Division denied as unpreserved for appellate review. Id.

As noted above, this Court finds that an ineffective assistance of trial counsel claim based upon the failure to challenge Juror Herwick for cause was a significant and obvious issue. Appellate counsel ignored that issue while pursuing claims that were clearly and significantly weaker.  Indeed, as outlined above, several of the claims actually raised had very little chance of success.

Moreover, given that the issues presented on appeal were neither lengthy nor complex, there was no strategic justification for not presenting the ineffective assistance claim along with the claims actually raised.  In other words, this was not a case where appellate counsel presented numerous, complex claims and was thus forced to "winnow out" some meritorious claims due to concerns regarding page limitations, time constraints, or maintaining the attention of the appellate court.  The ineffective assistance claim regarding Juror Herwick was in no way frivolous (in fact, it was significant and obvious) and would not have distracted from the other, quite limited claims actually asserted by appellate counsel. Compare with Brunson v. Tracy, 378 F. Supp.2d 100, 113 (E.D.N.Y. 2005) ("Appellate counsel's decision was therefore simply not ineffective, but prudent, as the raising of this frivolous argument may well have distracted from other, more meritorious issues urged by

appellate counsel.").

The omission of the ineffective assistance claim regarding trial counsel's failure to challenge Juror Herwick cannot be supported by any strategic justification and fell below an objective standard of reasonableness.

### c.    Prejudice

To satisfy the prejudice prong of the Strickland standard, "a petitioner must demonstrate that 'there was a 'reasonable probability' that [his] claim would have been successful before the [state's highest court].'" Mayo,13 F.3d at 533 (quoting Claudio v. Scully, 982 F.2d 798, 803-05 (2d Cir.1992)) (alterations in original).

This Court finds that there is a reasonable likelihood that the New York Court of Appeals would have reversed Petitioner's conviction if an ineffective assistance of trial counsel claim had been raised with respect to the failure to challenge Juror Herwick.

The Court of Appeals has overturned convictions where, as here, a prospective juror revealed a past experience that presents a potential for bias, but never provided an unequivocal assurance of impartiality. See, e.g., Arnold, 753 N.E.2d at 850-51; People v. Nichols, 781 N.E.2d 884 (2002); Bludson, 761 N.E. 2d at 1018; People v. Johnson, 730 N.E.2d 932, 940-42 (2000).

By way of example, the defendant in Arnold was charged with assaulting a former girlfriend.  A prospective juror indicated that she was questioning whether she should serve on the jury, because, as a result of her life experience and educational background, she "had a problem" with domestic violence. Arnold, 753 N.E. 2d at 849.  The prospective juror indicated that she would feel more comfortable sitting on a different kind of case, such as a robbery case. Id.  The trial court denied defense counsel's challenge for cause.  The

20

Court of Appeals reversed the conviction, finding that the trial court should not have seated the prospective juror "without obtaining her unequivocal assurance that she could be fair." Id. at 851.

The present case, like Arnold, involved a prospective juror indicating a level of discomfort and bias as a result of past life experience. As in Arnold, the prospective juror suggested that he would have no problem being fair in another type of case (*i.e.* where the events occurred in a shopping mall or someplace other than a bar), but strongly suggested that he was predisposed to hold certain views regarding this particular type of case (and, indeed, this particular type of defendant) due to his background. As with the prospective juror in Arnold, Juror Herwick never provided an unequivocal assurance that he could be fair despite his  life experience.

In People v. Johnson, 730 N.E.2d 932, the Court of Appeals rendered a decision on three appeals that had been consolidated because they raised similar questions concerning the failure to remove prospective jurors for cause. One of the cases (People v. Reyes), involved a prosecution for the sale of heroin. A prospective juror "acknowledged that, as a parent, she was particularly upset by drug abuse and could "only try" to be fair and impartial, but that "a lot of emotional things" could "color [her] views" about someone selling heroin." Johnson, 730 N.E.2d at 940. "Asked a second time whether her emotional feelings would affect her ability to be impartial, she responded 'it's difficult' and that, although defendant's criminal record did not *automatically* make him guilty, it 'might be difficult' for her to be open-minded." Id. (alteration in original). The Court of Appeals reversed the conviction because the prospective juror, having expressed doubt, never "unequivocally represented" that she could be fair and impartial.

21

In the present case, Juror Herwick acknowledged that, as the grandson of a bar owner, he had definite views about the "type of person" who frequented bars and, in particular, about their propensity to violence. Juror Herwick's comments made clear that he had some doubt about whether these experiences would color his view of the case. As noted above, Juror Herwick was never asked to provide and never provided an "unequivocal representation" and assurance that he could be fair and impartial. Under these circumstances, which are analogous to those presented in Arnold and Johnson, there is a significant likelihood that the Court of Appeals would have reversed the conviction.

Moreover, it should be noted that, under New York law, the failure to remove a juror for cause under such circumstances is *not* subject to harmless error analysis – reversal of the conviction is required. See People v. Hausman, 727 N.Y.S.2d 109, 110 (1st Dep't 2001)("Though the evidence against defendant was strong, the court's improper denial of defendant's challenge for cause is not subject to harmless error analysis."); People v. Russell, 791 N.Y.S.2d 198, 200 (3d Dep't 2005)("While review of the record indeed indicates that the evidence of defendant's guilt was substantial, an improper denial of a challenge for cause is not subject to harmless error analysis."); cf also Gomez v. United States, 490 U.S. 858, 876, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) ( "Among those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury") (quotations and citation omitted); United States v. Nelson, 277 F.3d 164, 203 n. 48 (2d Cir. 2002).

Based upon the foregoing, this Court finds that there is a substantial probability that, if the claim had been raised, the Court of Appeals would have concluded that trial counsel's failure to challenge Juror Herwick for cause constituted ineffective assistance of counsel and

22

that the conviction would have been overturned on that basis.  In turn, appellate counsel's failure to raise that issue on appeal, while presenting other, much weaker arguments, clearly amounted to ineffective assistance of appellate counsel under the <u>Strickland</u> standard.

As such, this Court finds that the denial of Petitioner's writ of error *coram nobis* was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, namely, the <u>Strickland</u> standard. <u>See</u> <u>Aparicio v. Artuz</u>, 269 F.3d at 78, 95 & n. 8 (2d Cir. 2001) (noting that "the <u>Strickland</u> standard ... is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'"(quoting 28 U.S.C. § 2254(d)(1)).   This Court therefore recommends that Petitioner's request for habeas relief be GRANTED as to this claim.

### 3.    Ineffective Assistance of Appellate Counsel (Lesser Included Offense)

Petitioner also asserts that his appellate counsel was ineffective because he did not raise an ineffective assistance claim regarding trial counsel's failure to request a jury instruction on the lesser-included offense of attempted assault in the second degree.  As above, to prevail on this claim, Petitioner must establish that trial counsel was ineffective in the first instance.

### a.    Trial Counsel's Failure to Request Lesser Included Instruction

Under New York law, an instruction on a lesser included offense must be given to the jury where (1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense. <u>People v. Glover</u>,453 N.Y.S.2d 660, 661 (N.Y.1982) (per curiam); <u>see</u> <u>also</u> <u>People v. Green</u>, 437 N.E.2d 1146, 1147-48 (1982); N.Y.Crim. Proc. Law § 300.50(1).

23

In the present case, Petitioner contends that his trial counsel should have requested an instruction with respect to the lesser included offense of attempted assault in the second degree pursuant to N.Y. Penal Law § 120.05 (1).  Under that subsection, a person is guilty of assault in the second degree if "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person."

Respondent concedes that assault in the second degree is a lesser included offense of second degree murder, because it is theoretically impossible to commit the latter without also attempting to commit the former. (Respondent's Memorandum of Law, at p. 20). However, Respondent argues that Petitioner was not entitled to a lesser included offense charge because "no reasonable view of the evidence" would have supported a finding that Petitioner committed attempt assault, rather than attempted murder.  For the reasons outlined below in Section III.B.3.b, the evidence submitted to the jury likely would not have supported a finding of attempted assault.  Accordingly, any request by defense counsel for an attempted assault instruction would likely have been denied on that basis.

However, even assuming *arguendo* that some reasonable view of the evidence would have supported a finding of attempted assault and that such a charge would have been given if requested, defense counsel appears to have had a strategic reason for electing not to request a lesser included offense charge.

Petitioner's trial counsel decided to argue that Petitioner simply intended to scare Furlong Jr.  The crux of the defense was that if Petitioner, a trained police officer skilled at using a firearm, had intended to harm Furlong Jr., he would have done so. (T. at 677-78).

This type of a defense, which denies guilt, is "a strategy that practically precludes a request for an instruction on a lesser included offense." Otero v. Eisenschmidt, No. 01

24

Civ.2562, 2004 WL 2504382 at *3 (S.D.N.Y. Nov. 8, 2004) (quoting <u>Yu v. United States</u>, 97 Civ. 2736, 1997 WL 423070 at *3 (S.D.N.Y. July 29, 1997) (internal quotation marks omitted).  Under such circumstances, the "[s]ubmission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt." <u>Colon v. Smith</u>, 723 F.Supp. 1003, 1008 (S.D.N.Y.1989).

Courts have concluded that trial counsel cannot be considered ineffective for failing to request a lesser included instruction when pursuing this type of defense.  <u>See</u>, <u>e.g.</u>, <u>Brown v. Rick</u>, 01 Civ. 4310, 2003 WL 22801397 at *6 (S.D.N.Y. Nov.25, 2003) (holding that counsel was not ineffective for failing to inform defendant of right to request lesser included offense because such a request is a matter of strategy); <u>Smith v. Walsh</u>, 02 Civ. 5755, 2003 WL 21649485 at *7 (S.D.N.Y. July 14, 2003) (finding that counsel was not ineffective for failing to request charge on lesser included offense because such a charge "would have undermined counsel's strategy of seeking an acquittal"); <u>Domingo v. Greiner</u>, 99 Civ.1906, 2002 WL 362761 at *2 (S.D.N.Y. Mar.5, 2002) ("While with hindsight, counsel's decision not to seek a lesser included offense charge did not prove successful, his decision not to give the jury an option that could result in a compromise verdict was not unreasonable.... For petitioner's counsel to make an argument that petitioner should be found guilty of [the lesser included offense] would severely undermine his basic argument that petitioner should not be found guilty of any crime."); <u>Rios v. United States</u>, No. CV-91-4384, 1992 WL 328931 at *6-7 (E.D.N.Y. Oct.13, 1992) ("Courts have declined to find ineffective assistance of counsel where counsel pursues an exculpatory defense although such a choice practically precludes a request for an instruction on a lesser included offense .... The tactical decision to pursue

25

a complete, exculpatory defense rather than a partial one enjoys substantial deference....
Having presented no evidence on a partial defense, counsel had no reason or basis to
request an instruction on the lesser included offense.")).

Furthermore, the jury was already being instructed regarding the lesser included
offense of reckless endangerment in the first degree, which was charged in Count 4 of the
Indictment.[7] (T at 755). Accordingly, defense counsel could reasonably have believed that
further instructions regarding yet another lesser included offense would result in jury
confusion and increase the possibility of a conviction.

Accordingly, this Court finds that trial counsel's decision not to request a lesser
included offense instruction on assault in the second degree did not fall below an objective
standard of reasonableness.

### b.      Appellate Counsel's Decision Not to Raise Claim

In light of the foregoing, this Court finds that appellate counsel's decision not to raise
a claim regarding trial counsel's failure to request a lesser included offense charge did not
fall below an objective standard of reasonableness. Although, as noted above, many of the
arguments advanced on appeal were not particularly strong, this Court cannot conclude that
this claim was clearly stronger than the claims raised.

Under New York law, the failure to request a limiting instruction "may constitute
ineffective assistance of counsel if the error were so serious that defendant did not receive
a fair trial." People v. Orcutt, 860 N.Y.S.2d 924, 924 (4th Dep't 2008). The New York courts
are highly reluctant to "second guess" trial counsel's decisions regarding what defense(s)

---

[7]Under New York Penal Law § 120.25, a "person is guilty of reckless endangerment in the first
degree when, under circumstances evincing a depraved indifference to human  life, he recklessly
engages  in  conduct  which creates a grave risk of death to another person."

to pursue and what charges to request. See, e.g., People v. Carter, 801 N.Y.S.2d 464, 465 (4th Dep't 2005) (""To prevail on a claim of ineffective assistance of counsel, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations for [defense] counsel's failure to [object to the charge and the verdict].") (quoting People v. Rivera, 525 N.E.2d 698, 709 (1988) (alterations in original); People v. Duell, 698 N.Y.S.2d 87, 89 (3d Dep't 1999) ("[T]rial counsel's acquiescence in this jury charge constituted a trial strategy and the failure of such a tactic cannot give rise to a claim of ineffective assistance of counsel.").

Given this deferential standard of review, this Court cannot say that it was error for appellate counsel to conclude that this particular claim of ineffective assistance was not clearly stronger than the claims presented.  Moreover, to establish a claim of ineffective assistance of appellate counsel, Petitioner "must demonstrate that 'there was a 'reasonable probability' that [his] claim would have been successful before the [state's highest court].'" Mayo,13 F.3d at 533.

For the reasons outlined above, it is unlikely that the Court of Appeals would have concluded that the decision not to request a lesser included offense charged amounted to ineffective assistance of counsel.  In fact, the case law strongly indicates that the Court of Appeals would have concluded that it constituted a strategic decision of trial counsel that did not give rise to an ineffective assistance claim.

Second, even assuming *arguendo* that the Court of Appeals might have found that trial counsel was ineffective in this regard, Petitioner would still need to establish that the lack of the lesser included offense instruction materially impacted the verdict.  See People v. Snyder,659 N.Y.S.2d 116, 117 (3d Dep't 1997) ("Although trial counsel erred in failing to

request this charge, we find that defendant was provided with effective representation as it cannot be said that this 'single error by counsel so seriously compromise[d] defendant's right to a fair trial.'") (quoting People v. Hobot, 646 N.E.2d 1102, 1103 (1995) (alteration in original); People v. Paige, 736 N.Y.S.2d 121, 123 (3d Dep't 2001)("Where, as here, the jury instructions are otherwise effective and the lack of instruction did not likely effect the outcome, the ascription of ineffectiveness must fail.").

In the present case, the jury was essentially presented with two arguments – either Petitioner intended to shoot and kill Furlong, Jr; or he simply intended to scare (but not actually harm) him.  There was no real evidence offered to indicate that Petitioner had fired intending to inflict some sort of non-fatal injury.  Petitioner testified in his own defense and specifically and repeatedly denied that he intended to "harm" anyone (T at 585, 587-88).  Petitioner stated unequivocally that he "absolutely" did not "want to hurt anybody." (T at 589).

Moreover, Petitioner testified that he was an "expert" marksman and that if he had wanted to hit Furlong Jr. he could have and would have.  (T. at 588-89).  A defense argument that Petitioner merely intended to injure Furlong would have undermined Petitioner's own testimony and, indeed, contradicted his strongest defense – namely, that his failure to hit Furlong, despite being a retired police officer and expert marksman, was the best evidence that he only intended to scare him.[8]

Accordingly, this Court finds that Petitioner has failed to establish any likelihood that the jury would have reached a different verdict if it had been presented with the lesser

---

[8]Defense counsel's decision not to request an attempted assault charge appears even more prudent when considered in light of this contradiction.

included offense of attempted assault. The jury was simply never presented with any evidence that might have led them to convict Petitioner of that crime.

Thus, Petitioner has not established that the Court of Appeals would have overturned his conviction if this particular ineffective assistance of trial counsel claim had been raised on direct appeal. As such, this Court cannot say that the denial of this aspect of Petitioner's ineffective assistance of appellate counsel was contrary to, or an unreasonable application of, the <u>Strickland</u> standard established by the Supreme Court and Petitioner is not entitled to habeas relief as to this claim.

### 4.    Ineffective Assistance of Appellate Counsel (Admission of Photographs)

Petitioner argues that his appellate counsel was ineffective because he failed to challenge the trial court's decision to admit photographs depicting a particular bullet hole (referred to as the "sixth bullet hole"), which was apparently located in the back door of the bar and described as "head-height" to Furlong, Jr. The photographs in question were taken almost a year after the shooting incident. All of the photos but one were admitted into evidence over defense counsel's objections. (T at 329). The trial court overruled defense counsel's objections, which were based upon the alleged lack of foundation, finding that the photographs were "fairly accurate" depictions of the crime scene and concluded that the defense would not be unfairly prejudiced by their admission. (T at 335).

This Court must determine whether appellate counsel's failure to challenge the trial court's ruling on appeal constituted ineffective assistance of appellate counsel. For the following reasons, this Court finds that it did not.

"The general rule is . . . [that] photographs are admissible if they tend 'to prove or

29

disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.' They should be excluded 'only if [their] *sole purpose* is to arouse the emotions of the jury and to prejudice the defendant.'" <u>People v. Davis</u>, 835 N.Y.S.2d 784, 785 (4th Dep't 2007) (quoting <u>People v. Wood</u>, 591 N.E.2d 1178, 1179 (1992) (alteration in original)).

"Where the photo tends to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered, whether to permit the jury to view it falls within the sound discretion of the trial court." <u>People v. Dickerson</u>, 837 N.Y.S.2d 101, 108 (1st Dep't 2007).

In the present case, there can be no dispute that the photographs were relevant as to disputed and material issues.  Further, there is no suggestion that the photographs would have tended to arouse the jury's emotions or that they were admitted solely for that purpose. The trial court concluded that a proper foundation had been laid. Petitioner's arguments regarding the passage of time between the events in question and the taking of the photographs called into question the weight of the evidence, rather than its admissibility. Defense counsel was permitted to, and did in fact, challenge the weight of the photographic evidence on this basis during cross-examination.

In light of the foregoing, it is highly unlikely that the Court of Appeals would have concluded that the trial court abused its discretion as to this evidentiary ruling.  Accordingly, appellate counsel's decision not to raise this claim did not fall below an objective standard of reasonableness and Petitioner cannot establish a claim of ineffective assistance of appellate counsel on this basis.

### 5. Ineffective Assistance of Appellate Counsel (Indictment)

Petitioner argues that his appellate counsel unreasonably failed to raise an ineffective assistance of trial counsel claim regarding trial counsel's decision not to challenge the indictment.  The indictment charged Petitioner with, *inter alia*, reckless endangerment in the first degree and attempted murder in the second degree.   Petitioner contends that the evidence only supported the reckless endangerment charge and was inconsistent with the charge of attempted murder.   Specifically, Petitioner argues that there was insufficient evidence that he possessed the requisite *mens rea*, i.e., to establish that he intended to kill Furlong Jr.  Petitioner asserts that trial counsel was ineffective for failing to seek dismissal of the indictment on this basis and that appellate counsel was likewise ineffective for failing to raise trial counsel's alleged ineffectiveness on direct appeal.

This Court finds that Petitioner has not established this claim was clearly stronger than the claims raised by appellate counsel on appeal.   Although, as noted above, the arguments advanced on appeal were not particularly strong, an ineffective assistance of trial counsel claim on this basis was highly unlikely to succeed.  For the reasons set forth below in Section III.B.6, there was legally sufficient evidence to support the attempted murder charge.  As such, it is highly unlikely that the Court of Appeals would have concluded that trial counsel's decision not to challenge the indictment on this basis constituted the ineffective assistance of counsel. Petitioner therefore cannot establish an ineffective assistance of appellate counsel claim based upon the failure to raise this particular issue on appeal.

6.      **Weight/Sufficiency of the Evidence**

In his final claim for habeas relief, Petitioner argues that his attempted murder conviction was against the weight of the evidence and, in the alternative, that there was insufficient evidence as a matter of law to support the conviction.   Each claim will be addressed in turn.

a.      **Weight of the Evidence**

A "weight of the evidence" claim derives from New York Criminal Procedure Law § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."

An argument that a verdict is against the weight of the evidence is a pure state law claim grounded in the criminal procedure statute, whereas a claim that the verdict is legally insufficient is based on federal due process principles. People v. Bleakley, 508 N.E.2d 672 (1987); see also Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. at 68, 112 S.Ct. 475; see also 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty").

Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. See, e.g., Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence ..."),

32

aff'd, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (dismissing claim that conviction was against the weight of the evidence; such a claim is not a basis for habeas relief but presents only an error of state law, for which habeas review is not available); Douglas v. Portuondo, 232 F.Supp.2d 106, 116 (S.D.N.Y.2002) (same).

Accordingly, Petitioner's "weight of the evidence" claim should be denied because a habeas petitioner's disagreement with the jury about the weight of the evidence does not raise a federal claim cognizable on habeas review. See, e.g., Garrett, 438 F.Supp.2d at 470; Douglas, 232 F.Supp.2d at 116.

### b.    Sufficiency of the Evidence

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' " Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at

179 ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

In making this assessment, the reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence[.]," Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996).  Thus, under this standard, a "'federal habeas court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir.1994) (quoting Jackson, 443 U.S. at 326, 99 S.Ct. 2781).

In the present case, Respondent argues that Petitioner cannot raise a sufficiency of the evidence claim because no such claim was ever presented to the state courts.  This Court need not reach that issue, however, because the claim fails even when considered on the merits. Cf. Mallet v. Miller, 432 F.Supp.2d 366, 376 n.7 (S.D.N.Y. 2006) ("Under these circumstances, rather than unravel the various procedural issues, this Court prefers to address the more straightforward questions presented by the merits . . . .).

By his own admission, Petitioner took two loaded firearms into the Furlong bar on the night in question, fired several shots inside the bar, then chased Furlong Jr. outside of the bar, where he again fired several shots.  (T at 586-88).  Eyewitnesses testified that Petitioner aimed the gun at Furlong Jr. and fired shots at him while yelling "I will kill you, motherfu**er." (T at 270, 274-75, 291, 496-97, 531-32).  Viewing this evidence in the light most favorable to the prosecution and resolving all credibility conflicts in their favor, this

34

Court finds that a rational trier of fact could certainly conclude that the attempted murder charge had been established beyond a reasonable doubt, including the element of that charge requiring proof that Petitioner possessed the requisite intent.

## V. CONCLUSION

For the reasons stated above, this Court finds that Neil Wallace is entitled to habeas relief as to his first claim of ineffective assistance of appellate counsel.  Petitioner has stated a cognizable claim.  To wit, his appellate counsel unreasonably disregarded an ineffective assistance of counsel claim based upon trial counsel's failure to challenge a prospective juror for cause, where the prospective juror acknowledged biased feelings and never gave an unequivocal assurance that he could be fair and impartial.  This claim was clearly stronger and more significant than the arguments actually advanced on appeal and there is a strong likelihood that the New York Court of Appeals would have overturned the conviction if this claim had been presented.  As such, Petitioner is entitled to habeas relief because the denial of this aspect of his writ of error *coram nobis* was an unreasonable application of the Strickland standard established by the Supreme Court.

However, for the reasons outlined above, this Court finds that Petitioner has not established that he is entitled to habeas relief as to any of his other claims. Therefore, the Court recommends that no certificate of appealability issue on those rejected claims.

Accordingly, it is respectfully recommended that Neil Wallace's Petition for habeas corpus relief (Docket No. 1) be GRANTED.  Specifically, it is recommended that the Petition be granted and that the State of New York be directed to immediately vacate Petitioner's conviction.  It is further recommended that the State be ordered to release Petitioner from

parole supervision  within thirty (30) days from the entry of an Order adopting or approving this Report and Recommendation, "unless New York State has, by that point, taken concrete and substantial steps expeditiously to retry" Petitioner.  Pavel v. Hollins, 261 F.3d 210, 229 (2d Cir. 2001).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:      February 3, 2011

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby  ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &**

Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 3, 2011

_____

Victor E. Bianchini
United States Magistrate Judge