**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NEIL WALLACE,**

                              **Petitioner,**

                  **v.**                                          **9:06-CV-464**
                                                                                 **(FJS/VEB)**

**DALE ARTUS, Superintendent,**

                              **Respondent.**
_____

**APPEARANCES**                                   **OF COUNSEL**

**KINDLON SHANKS & ASSOCIATES**      **TERENCE L. KINDLON, ESQ.**
74 Chapel Street
Albany, New York 12207
Attorneys for Petitioner

**OFFICE OF THE NEW YORK STATE**     **PRISCILLA I. STEWARD, AAG**
**ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      In 2002, Petitioner was convicted in a New York State court of Second Degree Attempted Murder and two counts of Second Degree Criminal Possession of a Weapon. Petitioner commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner filed this petition while he was incarcerated at Clinton Correctional Facility. He was subsequently transferred to Wallkill Correctional Facility and then, on November 20, 2010, he was released to parole supervision.

Currently before the Court are Respondent's objections to Magistrate Judge Bianchini's Report and Recommendation in which Magistrate Judge Bianchini recommended that this Court grant the petition and direct New York State to vacate Petitioner's conviction.  *See* Dkt. No. 21.[1]

## II. BACKGROUND[2]

**A.    Facts**

In the late evening hours of May 19, 2001, Petitioner, a retired police officer, fought with another patron at a bar in Durham, New York.  *See* Tr.[3] at 225, 412.  During the scuffle, the bar owner, Thomas Furlong, Sr. ("Furlong, Sr."), who knew Petitioner, asked him to stop fighting. *See id.* at 241.  Petitioner hit Furlong, Sr., sending him to the floor.  *See id.*  Thomas Furlong, Jr. ("Furlong, Jr."), the bar owner's son, grabbed Petitioner "by his collar and belt and threw him out the door" of the bar and told him not to come back.  *See id.* at 242, 487-88.

Thereafter, at about one o'clock in the morning of May 20, 2001, Petitioner returned to the bar with two .38 special caliber revolvers.  *See id.* at 415, 420; *see also* Dkt. No. 3 at 2. Upon entering the bar, Petitioner spotted Furlong, Jr. and began shooting.  *See* Tr. at 415. Petitioner followed Furlong, Jr. as he ran out of the back of the bar and continued shooting.  *See id.*  Petitioner then got into his van and drove away.  *See id.* at 418.  No one was injured.

Petitioner was arrested at his home a short while later and gave a statement to the police

---

[1] Petitioner filed a brief in support of Magistrate Bianchini's Report and Recommendation.  *See* Dkt. No. 24.

[2] Since the parties have not objected to Magistrate Judge Bianchini's factual recitation, the Court has adopted the "Background" facts from his February 3, 2011 Report and Recommendation.

[3] References preceded by "Tr." are to the transcript pages of Petitioner's trial.

confessing to firing shots, but stated that Furlong, Jr. had physically harmed him and that he only wanted to scare him. *See id.* at 411-21. Thereafter, a Greene County Grand Jury returned Indictment Number 01-094, which charged Petitioner with two counts of Attempted Murder in the Second Degree, two counts of Criminal Possession of a Weapon in the Second Degree, and one count of Reckless Endangerment in the First Degree.

**B.   Procedural history**

Petitioner's trial began on April 29, 2002, in the Greene County Court, with Judge George J. Pulver presiding. At trial, Dennis B. Schlenker, Esq. represented Petitioner. At the conclusion of trial, the jury found Petitioner guilty of one count of Attempted Murder in the Second Degree and two counts of Criminal Possession of a Weapon in the Second Degree. *See id.* at 771-74.[4] On July 9, 2002, the court sentenced Petitioner to a determinate term of ten (10) years imprisonment for his conviction for Attempted Murder in the Second Degree and a determinate sentence of ten (10) years imprisonment for each of his two convictions for Criminal Possession of a Weapon, to run concurrently with his sentence for Attempted Murder in the Second Degree.

Petitioner, represented by Carl J. Silverstein, Esq., appealed his conviction to the Appellate Division, Third Department. Petitioner asserted that his conviction for Attempted Murder in the Second Degree was against the weight of the evidence.

In a June 10, 2004 decision, the Third Department affirmed Petitioner's conviction. *See*

---

[4] Since the trial court instructed the jury not to consider the charge of reckless endangerment if it found Petitioner guilty of attempted murder, there was no verdict as to the charge of reckless endangerment. *See* Tr. at 755.

*People v. Wallace*, 777 N.Y.S.2d 817 (3d Dep't 2004).  The Third Department found that the conviction was not against the weight of the evidence and that Petitioner's claim that he was merely trying to scare Furlong, Jr. was an issue for the jury to resolve.  *See id.* at 820.  On August 31, 2004, the New York State Court of Appeals denied Petitioner's application for leave to appeal.  *See People v. Wright*, 3 N.Y.3d 682 (2004).

In May of 2005, Petitioner, acting *pro se*, filed an application for a writ of *error coram nobis*.  Petitioner argued that his appellate counsel unreasonably failed (1) to argue that his trial counsel was ineffective for failing to remove a potential juror for cause based on the juror's statement during *voir dire* that he could not be fair and impartial; (2) to raise the issue of the trial court's error in allowing damaging photographs of a "sixth" bullet hole found on the rear door of the bar without requiring the prosecution to lay a proper foundation; (3) to argue that his trial counsel was ineffective for failing to seek a jury charge on the lesser included offense of attempted assault in the second degree; and (4) to argue that the indictment was defective for charging Petitioner with both intentional conduct (attempted murder) and reckless conduct (reckless endangerment) when the evidence supported only recklessness.

On August 16, 2005, the Appellate Division, Third Department, denied the application. On January 25, 2006, the New York State Court of Appeals denied Petitioner's application for leave to appeal.

Petitioner, proceeding *pro se*, commenced this action on April 3, 2006.  In his petition, Petitioner asserted that he was denied the effective assistance of appellate counsel and that the evidence was insufficient to sustain the attempted murder conviction.  *See* Dkt. No. 3.  In September of 2006, Petitioner filed a supplemental memorandum of law adding a further

argument in support of his ineffective assistance of appellate counsel claim. Specifically, he argued that his appellate counsel was ineffective for failing to raise the issue on appeal that his indictment was defective because it charged Petitioner with both intentional conduct (attempted murder) and reckless conduct (reckless endangerment), where the evidence only supported the charge of recklessness. *See* Dkt. No. 7.

In a February 3, 2011 Report and Recommendation, Magistrate Judge Victor E. Bianchini found that Petitioner's "appellate counsel unreasonably disregarded an ineffective assistance of counsel claim based upon trial counsel's failure to challenge a prospective juror for cause, where the prospective juror acknowledged biased feelings and never gave an unequivocal assurance that he could be fair and impartial[,]" and, that "Petitioner [was] entitled to habeas relief because the denial of this aspect of his writ of error *coram nobis* was an unreasonable application of the *Strickland* standard established by the Supreme Court." *See* Dkt. No. 17 at 35. Therefore, Magistrate Judge Bianchini recommended that this Court grant the petition and direct the State of New York to vacate Petitioner's conviction immediately. *See id.* Finally, Magistrate Judge Bianchini recommended that this Court order the State of New York "to release Petitioner from parole supervision within thirty (30) days from the entry of an Order adopting or approving this Report and Recommendation, 'unless New York State has, by that point, taken concrete and substantial steps expeditiously to retry' Petitioner." *See id.* at 35-36.

### III. DISCUSSION

**A.    Standard of review**

When a party makes specific objections to a magistrate judge's recommendations, the

district court engages in *de novo* review of the issues raised in the objections. *See Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008) (citation omitted). When a party fails to make specific objections, however, the court reviews the magistrate judge's recommendations for clear error. *See id.* at 306 (citation omitted); *see also Gamble v. Barnhart*, No. 02CV1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004) (citations omitted).

Section 2254 of Title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs federal habeas corpus review of a state-court conviction. The enactment of the AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. In discussing this deferential standard, the Second Circuit noted in *Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006), *cert. granted, judgment vacated and case remanded on other grounds by* 549 U.S. 1163 (2007), that

> a federal court may award habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Id.* at 73 (quoting 28 U.S.C. § 2254(d)) (footnote omitted); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (quotation omitted); *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) (quotation omitted).

In providing guidance concerning the application of this test, the Second Circuit has observed that

> a state court's decision is "contrary to" clearly established federal

> law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [*Williams v. Taylor*, 529 U.S. 362] at 405-06, 120 S. Ct. 1495 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001) . . . . [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams*, 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted). Courts have interpreted "objectively unreasonable" in this context to mean that "'some increment of incorrectness beyond error'" is required for the habeas court to grant the application. *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-deferential AEDPA standard of review when the state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan*, 261 F.3d at 312 (quotation omitted). In this regard, it is not necessary for the state court to refer explicitly to the particular federal claim or to relevant federal case law. *See id.*

If, however, a state court does not adjudicate a petitioner's federal claim "on the merits,"

the state court's decision is not entitled to AEDPA deference; and, instead, the federal habeas court must apply the pre-AEDPA standard of *de novo* review to the state court's disposition of the federal claim. *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001)).

**B.     Ineffective assistance of counsel**

*1. Standard*

Under the standard that the Supreme Court promulgated in *Strickland v. Washington*, 466 U.S. 688 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The habeas petitioner bears the burden of establishing both deficient performance and prejudice. *See United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) (citation omitted).

In this case, because the Appellate Division found that Petitioner's trial counsel rendered meaningful assistance to Petitioner, AEDPA deference applies. *See* Dkt. No. 1 at 17. Petitioner asserts that his appellate counsel was ineffective because he did not raise the issue of trial counsel's failure to excuse a prospective juror for cause.

Pursuant to the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed the right to an impartial and unbiased jury. *See Morgan v. Illinois*, 504 U.S. 719, 726 (1992) (citation omitted). "The failure to accord an accused a fair hearing violates even the minimal

-8-

standards of due process." *Id.* at 727 (citations omitted).

In the present case, during the first round of *voir dire*, Petitioner's counsel, Dennis Schlenker, asked the panel of prospective jurors if the fact that the incident occurred in a bar would affect their deliberations. *See* Tr. at 93. At that point, Mr. Herwick[5] raised his hand and the following colloquy took place:

| | |
|---|---|
| Prospective Juror: | My grandparents owned a bar for a number of years and I grew up in that situation. It being on the other side of the bar and interacting with people who attended too. |
| Mr. Schlenker: | Same question, do you feel it would affect your deliberation? |
| Prospective Juror: | I do have a viewpoint of what occurs in a country bar with the interaction. |
| Mr. Schlenker: | I'm sure we all have and people watch television. My question to you is would that affect your deliberations in this case, because you are not assessing what occurs in a country bar. You are not expected to write a scenario on a country bar. You are to judge the actions not only of Neil Wallace, what he did or did not do, but the other people in the bar; do you think you could do that fairly? |
| Prospective Juror: | I could try. You asked me if I had any experience in that type of situation. |

---

[5] In the trial transcript, the conversation was ascribed to prospective juror Mr. Hirschberg. However, as Respondent points out, given that Petitioner's counsel suggested that further inquiry be conducted in the judge's chambers on the issue of the juror's past experience with bars and that the records showed that it was Mr. Herwick who met with the parties and the judge in chambers, the reference to Mr. Hirschberb regarding the initial discussion of this issue appears to be a stenographer's error. *See* Dkt. No. 21 at 3 n.2. Further, both in chambers and during questioning in open court, the prospective juror discussed the fact that his grandparents owned a bar and that he spent a significant amount of time there. *See* Tr. at 93-94, 115-17. Both Mr. Hirschberg and Mr. Herwick were selected for the jury without any challenges. *See id.* at 126. In his response to Respondent's objections, Petitioner appears to accept that the reference to Mr. Hirschberg was simply a typographical error and that the questions were in fact posed to Mr. Herwick.

| | |
|---|---|
| Mr. Schlenker: | The mere fact that your family was in the bar business, that won't affect your deliberations, would it? |
| Prospective Juror: | I have a certain viewpoint as to what – I don't know all the details. |
| Mr. Schlenker: | Maybe we could ask you that afterwards, without publishing it to the jury. |

*See* Tr. at 93-94. After the attorneys finished questioning the prospective jurors in open court, both parties met with the judge and certain jurors in chambers for additional questioning. After the parties and the judge spoke with a different juror, they met with Mr. Herwick and the following colloquy took place:

| | |
|---|---|
| The Court: | . . . Hi, Mr. Herwick. You are a kid that hung around bars? |
| Prospective Juror: | I had no choice. |
| The Court: | In narrative form, would it affect your judgment one way or the other in the case, as you know the facts of this case so far? |
| Prospective Juror: | The only reason I brought it up, when you were reading the indictment and explaining that the situation occurred in and around a bar and you said it several times, I kept thinking of all the instances of when I was growing up and I actually tended the bar and helped with my grandparents, the types of situations that might have occurred and I didn't think if that would affect any of the situations that occurred. |
| Mr. Wilhelm:[6] | No questions. |
| Mr. Schlenker: | What bar? |
| Prospective Juror: | Silver Lake, in Climax. |
| Mr. Schlenker: | Okay. |

---

[6] Mr. Wilhelm was the prosecuting attorney.

-10-

| | |
|---|---|
| The Court: | Any more questions, other than that? |
| Mr. Schlenker: | The fact that you will find out a person is going to testify for the prosecution was the son of the owner, and the owner of the bar and so forth, are these facts, because of your personal circumstances growing up, going to cause you to favor one side or the other? |
| Prospective Juror: | Well, I definitely have an opinion about what I have experienced. |
| Mr. Schlenker: | Well, what is that opinion? |
| Prospective Juror: | I don't mean to be – I'm just not a person that attends bars. I think the type of people that attended my grandfather's bar from that community, there was always a lot of trouble and I might have an opinion that might not have been true and that was the reason I brought that up. |
| Mr. Schlenker: | Does that mean you would stand ready to convict somebody in a bar situation anymore quickly than anyone else? |
| Prospective Juror: | If the same situation occurred in a mall, I guess I wouldn't have any problem with that.  Since it occurred near a bar, I might think – no offense – but the type of person that would attend that bar or what occurs there, they become more inebriated, certainly has an effect on that and I witnessed it many times.  At my grandfather's bar, he himself carried a weapon to protect himself in various situations where he was in danger. |

*See id.* at 115-17.

Thereafter, the court met with two additional prospective jurors and then the parties began exercising their *voir dire* challenges.  The record demonstrates that, as the attorneys made their selections, Petitioner and his counsel conferred with each other.  *See id.* at 121.  When the court asked Petitioner's counsel if he wished to make any challenges for cause, he answered, "No.  I'm constrained to tell you that, your Honor."  *See id.*  Thereafter, Petitioner's counsel

-11-

interrupted the proceedings to confer with Petitioner and subsequently asked the court for a brief recess, which the court granted. *See id.* at 121-22. Upon returning from the recess, Petitioner's counsel continued to confer with Petitioner while selections were being made. *See id.* at 123-24. Petitioner's counsel raised no peremptory challenge to Mr. Herwick, and he was selected to serve on the jury. *See id.* at 126.

Magistrate Judge Bianchini found that, based on the colloquy above, Mr. Herwick gave "a very clear indication that he was biased against bar patrons (and specifically inclined to believe such patrons were likely to engage in violence) and in sympathy with bar owners." *See* Dkt. No. 17 at 14. As such, Magistrate Judge Bianchini held that Petitioner's trial counsel's failure to remove this juror, or to require him to unequivocally assure that he could be impartial, constituted ineffective assistance of counsel. *See id.* at 14-16. Since trial counsel's failure constituted ineffective assistance, Magistrate Judge Bianchini also held that Petitioner's appellate counsel rendered ineffective assistance in failing to raise this claim on direct appeal. *See id.* at 16-20.

The Court disagrees. As set forth below, the Court finds that Petitioner failed to establish that his trial counsel's decision not to challenge Mr. Herwick for cause was outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

### *2. Counsel's performance*

Magistrate Judge Bianchini found that Mr. Herwick "clearly expressed doubt about whether he could be fair toward Petitioner[,]" and, in fact, "his responses indicated that he was very likely to be biased against Petitioner." *See* Dkt. No. 17 at 15.

Respondent claims that at no point did Mr. Herwick express that his experience with bars made him biased against Petitioner or would lead him to judge Petitioner's case unfairly. *See* Dkt. No. 21 at 7. Respondent asserts that it appears that Petitioner's trial counsel, who conferred regularly with Petitioner during jury selection, wanted Mr. Herwick on the jury as part of their trial strategy. *See id.* at 7-8. Respondent contends that Petitioner's defense strategy at trial was that, although he had fired the shots, he only intended to scare Furlong, Jr. Had Petitioner intended to kill him, given the fact that he considered himself an "expert marksman," he would have. *See id.* at 8. Respondent claims that it is possible that, given Mr. Herwick's background, Petitioner determined that he might be more receptive to Petitioner's claim that he did not intend to kill Furlong, Jr and that Petitioner believed that Mr. Herwick would be familiar with "bar scene dynamics" and that sometimes bar patrons fight not because they intend to do harm, but because of the effects of alcohol and pride. *See id.* at 8-9.

The first prong of the *Strickland* test requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690, 104 S. Ct. 2052). This inquiry examines the reasonableness of counsel's actions under all of the circumstances of the case, keeping in mind that "'[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quotations omitted). "In assessing performance, [the court] must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quotation omitted). "Thus, '[a] lawyer's decision not to

pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision,' *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,' *Strickland*, 466 U.S. at 690-91, 104 S. Ct. 2052." *Id.* "Moreover, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quotation omitted).

In the present matter, Petitioner's counsel was not passive during the extensive *voir dire* examination. Petitioner's counsel struck one potential juror for cause, *see* Tr. at 175, and objected to several of the prosecution's objections to potential jurors for cause, *see id.* at 173-74. Moreover, Petitioner's counsel exercised peremptory challenges for Mr. Skraastad, Ms. Bel, Ms. Start, Ms. Margolius, Ms. Erceg, Ms. June, Miss Pacquin, Ms. Warner, Mr. Puckett, and Miss Imperiale. *See id.* at 123-24, 173-77. For almost every juror at issue, Petitioner's counsel conferred with Petitioner before deciding whether to challenge that juror. *See id.*

Mr. Schlenker's and Petitioner's active participation in the *voir dire* process and successful challenge to many prospective jurors suggests that Petitioner and his trial counsel deliberately decided to keep Mr. Herwick on the jury as part of the defense's trial strategy. *See Charlemagne v. Goord*, No. 05 Civ. 9890, 2008 WL 2971768, *27 (S.D.N.Y. June 30, 2008) (holding that "[c]ounsel's challenge to these prospective jurors 'suggests that counsel deliberately chose not to challenge [the sheriff's deputy] as part of trial strategy that "might be considered sound"'" (quoting *Nova v. Ercole*, [No. 06 Civ. 562,] 2007 WL 1280635, at *8 (S.D.N.Y. Apr. 30, 2007)] (quoting *Strickland v. Washington*, 466 U.S. at 690). The trial record lends support to

this position.

At trial, Petitioner admitted to firing the shots but testified that, had he meant to kill Furlong, Jr., he would have, considering the fact that he was an "expert marksman." As such, his trial strategy was that he did not possess the requisite state of mind to commit the crime charged. Considering this strategy, it was not unreasonable for Petitioner's counsel to seek out jurors who would be familiar with violence in bars in that they might understand that the participants did not always intend to cause serious harm. *See Rodriguez v. Breslin*, No. 05-CV-1639, 2009 WL 424738, *9 (E.D.N.Y. Feb. 20, 2009) (holding that, "[g]iven this defense strategy, it was perfectly reasonable for counsel to seek out jurors who might be sympathetic to his argument that, while Petitioner may have been 'guilty of poor judgment,' he lacked the mental state necessary to find him guilty of acting in concert in the attempted robbery").

Based on the foregoing, the Court finds that the state court's decision that Plaintiff's counsel provided him with effective assistance of counsel was not contrary to or an unreasonable application of clearly established federal law, *i.e.*, *Strickland*.

### *3. Prejudice (actual bias)*

The second prong of the *Strickland* test focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the error was of a magnitude such that it "'undermine[s] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quotation omitted). "'An error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quotation omitted). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

Magistrate Judge Bianchini found that "there [was] a reasonable likelihood that the New York Court of Appeals would have reversed Petitioner's conviction if an ineffective assistance of trial counsel claim had been raised with respect to the failure to challenge Juror Herwick." *See* Dkt. No. 17 at 20. Specifically, Magistrate Judge Bianchini found that "[t]he Court of Appeals ha[d] overturned convictions where, as here, a prospective juror revealed a past experience that present[ed] a potential for bias, but never provided an unequivocal assurance of impartiality." *See id.* (citations omitted).

Respondent claims that Petitioner must show that Mr. Herwick was actually biased towards him, not simply that there was a chance that he was biased. *See* Dkt. No. 21 at 10. Respondent asserts that Mr. Herwick never directly admitted to being partial; and, in fact, Mr. Herwick stated that he "could try" to judge Petitioner's case impartially, which is sufficient to defeat Petitioner's claim. *See id.* at 10-12.

Even assuming, *arguendo*, that Petitioner's counsel's failure to challenge Mr. Herwick was objectively unreasonable, Petitioner has not established that this juror was actually biased against him. *See United States v. Torres*, 128 F.3d 38, 43 (2d Cir. 1997). "Actual bias is 'bias in fact' – the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Id.* (quotation omitted).

Upon examining the *voir dire* transcript, the Court concludes that the record does not support a finding that Mr. Herwick was actually biased against Petitioner. At best, Mr. Herwick's answers to the *voir dire* questions were ambiguous. He stated that he had "an opinion," but not what that opinion was. Further, when he was asked if he could judge Petitioner's actions and the actions of others in the bar fairly, he answered that he "could try." *See* Tr. at 93-94; *see also Rodriguez v. Breslin*, No. 05-CV-1639, 2009 WL 424738, *8 (E.D.N.Y. Feb. 20, 2009) (holding that the allegedly biased juror's statement "that she 'would try' to decide the case based on the evidence presented was a sufficient assurance for both the trial judge and counsel to be satisfied of her impartiality" (citing *United States v. Towne*, 870 F.2d 880, 885 (2d Cir. 1989); *United States v. Ploof*, 464 F.2d 116, 117-18 (2d Cir. 1972)). In addition to the above testimony, Mr. Herwick agreed that he would "evenhandedly scrutinize the testimony, regardless of race, creed, age, color, garb, hairstyle, clothing, political affiliation, station in life, regardless of those factors and evenhandedly decide this case[.]" *See* Tr. at 53. Finally, he agreed that he would "leave sympathy and emotions out of [his] deliberations and decide it from the facts on this witness stand[.]" *See id.* at 57.[7]

---

[7] In a similar context, the Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on *voir dire*. In *Patton v. Yount*, 467 U.S. 1025 (1984), the Supreme Court found that the trial court did not commit "manifest error" when finding jury members to be impartial. *See id.* at 1032. Eight of the fourteen jurors in question, due to pretrial publicity, "admitted that at some time [prior to trial] they had formed an opinion as to [defendant's] guilt." *Id.* at 1029-30 (footnoted omitted). One of the impaneled jurors "stated at *voir dire* that he would have required evidence to change his mind about [defendant's] guilt." *Id.* at 1030-31. Further, the Supreme Court noted that the *voir dire* testimony of the three primary jurors in question was "ambiguous and at times contradictory," explained in part by "the type of leading questions and cross-examination tactics . . . that were evident in this case." *Id.* at 1039.

(continued...)

Finally, given the extensive *voir dire* questioning, even if Petitioner's trial counsel had challenged Mr. Herwick for cause, there is no indication that the state court would have granted his application. Mr. Herwick never outright stated that he would be biased against Petitioner because the incident occurred in a bar; and, in fact, he stated that he "could try" to be impartial when individually asked and also stated that he would judge the case solely on the facts when the court posed the question to a number of potential jurors all at once. Based on the foregoing, the Court rejects Magistrate Judge Bianchini's recommendation with respect to Petitioner's ineffective assistance of counsel claim and denies Petitioner's petition on that ground.

## C.    Petitioner's remaining claims

Petitioner did not object to those parts of Magistrate Judge Bianchini's Report and Recommendation in which he denied Petitioner's claims that (1) his appellate counsel was ineffective for failing to challenge the trial court's decision to admit photographs depicting a particular bullet hole; (2) his appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim regarding trial counsel's decision not to challenge the indictment; and (3) his attempted murder conviction was against the weight/sufficiency of the evidence. *See* Dkt. No. 17 at 29-35. The Court has reviewed Magistrate Judge Bianchini's

---

[7](...continued)
In *Murphy v. Florida*, 421 U.S. 794 (1975), the Supreme Court found that the defendant had "failed to show that . . . the jury-selection process of which he complains permits an inference of actual prejudice." *Id.* at 803. One juror in *Murphy* agreed, on *voir dire*, with the characterization that "[m]y experience of [defendant] is such that right now I would find him guilty." *Id.* at 802 n.5. Another juror responded during *voir dire* that the defendant's prior convictions would "probably" influence her verdict. A third juror conceded that "it would be difficult, during deliberations, to put out of [the juror's] mind that [defendant] was a convicted criminal." *Id.* at 805-07 (Brennan, J., dissenting).

recommendations regarding these claims and finds them to be correct.

**D.     Certificate of appealability**

The Court notes that 28 U.S.C. § 2253(c)(1) provides, in relevant part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[8]  28 U.S.C. § 2553(c)(1).  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Since Petitioner has failed to make such a showing, the Court declines to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

**IV. CONCLUSION**

After carefully reviewing the entire record in this matter, Magistrate Judge Bianchini's Report and Recommendation, Respondent's objections, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Bianchini's February 3, 2011 Report and Recommendation is **REJECTED** insofar as Magistrate Judge Bianchini found that Petitioner's appellate counsel provided ineffective assistance of counsel for unreasonably disregarding an

---

[8] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).

-19-

ineffective assistance of counsel claim based on trial counsel's failure to challenge a prospective juror for cause; and the Court further

**ORDERS** that Magistrate Judge Bianchini's February 3, 2011 Report and Recommendation is **ADOPTED** in all other respects; and the Court further

**ORDERS** that Petitioner's habeas corpus petition is **DENIED** and **DISMISSED** in its entirety; and the Court further

**ORDERS** that a Certificate of Appealability shall **NOT** be issued in this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 31, 2011
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge